**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

RYAN A. JEFFERSON                        CIVIL ACTION NO. 23-0598

                                         SECTION P

VS.

                                         JUDGE TERRY A. DOUGHTY

RICHLAND DETENTION CENTER, ET AL.    MAG. JUDGE KAYLA D. MCCLUSKY

**REPORT AND RECOMMENDATION**

Plaintiff Ryan A. Jefferson, a prisoner at Richland Parish Detention Center ("RPDC")

proceeding pro se and in forma pauperis, filed this proceeding on approximately May 4, 2023,

under 42 U.S.C. § 1983.  He names the following defendants: RPDC, Head Nurse Kendra

Vaughn, Warden Frank Deer, and Warden Wade.[1]  For reasons that follow, the Court should

dismiss Plaintiff's claims.

**Background**

Plaintiff states that he has hemorrhoids which have been swelling and bleeding

periodically for months.  [doc. #s 1-3, p. 2; 9, p. 1].  He suggests that he was or is unable to sit or

lie "on a hard surface for long periods of time" because of his hemorrhoids.  *Id.*

Plaintiff also states that he could not sleep because "they took [him] off" his Serquels[2]

medication "for no reason."  [doc. # 1, p. 3].  He suggests that he was diagnosed with depression,

schizophrenia, and severe personality disorder.  [doc. # 1-3, p. 1].  Because he lacks his

medication, he hears voices and experiences paranoia, restlessness, hyper-activity, paranoid

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

[2] While it is unclear, Plaintiff may have intended to write "Seroquel."

delusions, and nightmares.  [doc. #s 1-3, p. 1; 9, p. 1].  He claims that "they" lied when they told

him that "they didn't give out" his medication.  [doc. # 9, p. 1].  Another inmate in his dormitory

received the same medication.  [doc. # 1-3, p. 1].

Plaintiff attaches an "Offender Request Form" he directed to Warden Wade, dated

August 31, 2021, in which he stated in pertinent part that he had a mental illness, that he needed

to be at a medical facility to receive medication, that he was "taken [] off his prescribed

medication[,]" and that his hemorrhoids had been bleeding for 6 months.  [doc. # 1-3, p. 2].  He

requested a transfer to another facility for treatment.  *Id.*  He received a response, ostensibly from

Warden Wade,[3] stating: "I can put you on [a] transfer list, but no shipping is taking place right

now.  Mr. O should be back in a couple week[s] from his medical leave."  *Id.*

Plaintiff writes: "I never received medical care, only thing I received was some

Preparation H ointment August 31, 2021.  [sic]."  [doc. # 9, p. 1].  He suggests that Nurse

Vaughn supplied the ointment.  *Id.*  He "was told this is all they can do for [him]," but he

maintains that this "is not true."  *Id.*

On approximately September 2, 2021, Plaintiff filed a "Request for Administrative

Remedy Procedure," stating among other things that he was "taken off his prescribed

medication" after he arrived at RPDC, that he was experiencing symptoms from a mental

disorder, and that he had been taking his medication for two years.  [doc. # 1-3, p. 1].  He

requested $20,000.00 for his pain and suffering.  *Id.*  "[N]o action was taken within the time

limits."  [doc. # 1, p. 3].

On an unknown date, Plaintiff filed an "Offender Request," stating that his hemorrhoids

were "bleeding bad."  [doc. # 1-3, p. 3].  He suggested that his hemorrhoids were bleeding

---

[3] The signature of the respondent is difficult to read.

because the mat that he had was too thin; he requested an additional mat. *Id.* He also stated that

he could not sleep because "someone took [him] off [his] meds when" he arrived at the facility.

*Id.* On November 15, 2021, Nurse Kendra Vaughn responded, "Complete sick call." *Id.* In his

pleading here, Plaintiff claims that Nurse Vaughn refused a "check up on [his] hemorrhoids

condition . . . ." [doc. # 9, p. 1].

Plaintiff claims that Warden Deer and Warden Wade "are in violation [of] R.S. 14:134.1,

(1), (2), (3) malfeasance, by not tending to this matter." [doc. # 9, p. 1]. He adds, "By them

neglecting me, my hemorrhoids ha[ve] been bleeding periodically and swelling." *Id.* He

suggests that Deer and Wade should have transported him to a physician "to have this matter

checked on." *Id.*

Plaintiff seeks a transfer to another facility for medical care and $20,000.000 for his pain

and suffering. [doc. # 1, p. 4].

### Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a

prisoner seeking redress from an officer or employee of a governmental entity, his complaint is

subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[4] *See Martin v. Scott,* 156 F.3d

578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his

Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b)

provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is

---

[4] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any
facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations
of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary
program."

frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks

monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact."

*Neitzke v. Williams,* 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is

"based on an indisputably meritless legal theory." *Id.* at 327.  Courts are also afforded the

unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual

contentions are clearly baseless.  *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,*

550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is

facially plausible when it contains sufficient factual content for the court "to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies

somewhere in between.  *Id.*  Plausibility simply calls for enough factual allegations to raise a

reasonable expectation that discovery will reveal evidence to support the elements of the claim.

*Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific

task that requires the reviewing court to draw on its judicial experience and common sense."

*Iqbal, supra.*  A well-pled complaint may proceed even if it strikes the court that actual proof of

the asserted facts is improbable and that recovery is unlikely.  *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual

allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).  However, the

same presumption does not extend to legal conclusions. *Iqbal, supra*.  A pleading comprised of

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not

satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action

in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148,

152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state

a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A.

(Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926

F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights

complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788

F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by

the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was

committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638

(5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a

"[S]ection 1983 complaint must state specific facts, not simply legal and constitutional

conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Medical Care**

To plead a constitutional violation, a plaintiff "must demonstrate that a government

official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E.

Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (*quoting Wagner v. Bay City*,

227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an

inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm

and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*,

511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

### A. Medical Care for Hemorrhoids

As above, Plaintiff has hemorrhoids which have been swelling and bleeding periodically for months. He also suggests that he is or was unable to sit or lie "on a hard surface for long periods of time" because of his hemorrhoids.

i. <u>Nurse Vaughn</u>

As to Nurse Vaughn, Plaintiff pleads potential negligence or malpractice at best, simply disagreeing with the care Vaughn provided. On approximately August 31, 2021, he requested a transfer to another facility to obtain treatment for his hemorrhoids, which had been bleeding for 6 months. [doc. # 1-3, p. 2]. Nurse Vaughn gave him Preparation H ointment the same day. Nurse Vaughn's provision of ointment does not reflect deliberate indifference.[5] *See Nunley v. Mills*, 217 F. App'x 322, 324 (5th Cir. 2007) ("With respect to Nunley's Eighth Amendment claim that Dr. Mills prescribed the wrong medication for his hemorrhoids, at best, Nunley has stated a claim of negligence, malpractice, or disagreement with treatment, which will not support a finding of deliberate indifference under the Eighth Amendment."); *Campbell v. Brown*, 756 F. App'x 386, 389 (5th Cir. 2018) ("[T]o the extent Campbell contends that Brown's treatment of his hemorrhoids was otherwise lacking, he merely disagrees with her professional decision-making or, at best, shows that she was negligent, neither of which amounts to deliberate indifference.").[6]

Plaintiff claims that "they" could have provided additional care. However, "There is no . . . claim just because an inmate believes that medical personnel should have attempted different

---

[5] *See Petzold v. Rostollan*, 946 F.3d 242, 250 (5th Cir. 2019) ("[B]ecause medical treatment was provided, even if it was . . . based on a perfunctory and inadequate evaluation, it was not denied."); *Adams v. Fuller*, 2022 WL 17250191, at *1 (5th Cir. Nov. 28, 2022) ("[T]he medical records are replete with notes of sick calls, examinations, and diagnoses related to his ear, which further rebut his allegations of deliberate indifference.").

[6] *See also Miller v. Kalmanov*, 252 F. App'x 680, 681 (5th Cir. 2007); *Fonseca v. Kuykendall*, 34 F. App'x 152 (5th Cir. 2002).

diagnostic measures or alternative methods of treatment." *Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019).[7]

Ultimately, Plaintiff's disagreement or dissatisfaction with the care he received falls short of establishing deliberate indifference and does not, consequently, state a plausible claim. To the extent Plaintiff pleads negligence or malpractice, "mere negligence will not suffice to support a claim of deliberate indifference." *Mathis v. Alexander*, 49 F.3d 728 (5th Cir. 1995). If Plaintiff intends to pursue a negligence/malpractice claim, he should do so in state court. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court . . . .").

ii. Follow-Up Care

On an unknown date, Plaintiff filed an "Offender Request," stating that his hemorrhoids were "bleeding bad." [doc. # 1-3, p. 3]. He suggested that his hemorrhoids were bleeding because the mat that he had was too thin; he requested an additional mat. *Id.* He does not specify whether he filed his request before or after he received hemorrhoid ointment.

On November 15, 2021, Nurse Kendra Vaughn responded, "Complete sick call." *Id.* Plaintiff claims that Nurse Vaughn refused him a "check up on [his] hemorrhoids condition . . . ." [doc. # 9, p. 1].

---

[7] *See Vessell v. Myles*, 781 F. App'x 355 (5th Cir. 2019) ("While Vessell argues that he continued to experience pain and swelling, Myles's unsuccessful treatment and Vessell's disagreement with the treatment are insufficient to demonstrate deliberate indifference."); *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992) (finding that an inmate received adequate care, even though the treatment may not have been the best, and that any deficiencies in treatment were minimal; moreover, the plaintiff's continuing pain, in and of itself, did not demonstrate that a constitutional violation occurred).

To the extent Plaintiff claims that he did not receive 'follow-up' care, he does not state a plausible claim. *See Mathis*, 49 F.3d at 728 (finding complaints of not receiving follow-up examinations did "not rise to the level of deliberate indifference").

Further, even assuming Plaintiff filed his "Offender Request" after Nurse Vaughn provided hemorrhoidal ointment on August 31, 2021, and assuming further that Plaintiff alleges he continued suffering symptoms after using the ointment, he does not allege that he informed Vaughn that his injuries "dramatically increased in severity" after she provided the ointment such that Vaughn "would have effectively denied or delayed treatment for a new injury not previously treated . . . ." *See Petzold v. Rostollan*, 946 F.3d 242, n. 42 (5th Cir. 2019). Rather, Plaintiff suggests that at worst Vaughn deferred to the prior treatment/medication she provided. This does not reflect deliberate indifference: "[A]n official defers to prior treatment—and doesn't delay it—when he knows an injured prisoner has recently received medical care and denies the prisoner's additional treatment request for the same injury. . . . [M]erely refusing to provide additional treatment is insufficient for deliberate indifference." *Petzold*, 946 F.3d at 242 (finding that a supervisor did not deny or delay treatment because a nurse already treated the plaintiff's injury and the supervisor, who was aware of the prior treatment, simply "*deferred* to a medical professional's prior treatment."). As the court stated in *Petzold*, a plaintiff "cannot disguise [] deliberate inaction as [] deliberate indifference." *Id.*

Plaintiff alleges: "Not being brought to a Dr. to have this matter checked on. [sic]." [doc. # 9, p. 1]. To the extent he claims that he only received medical treatment from a nurse rather than from a physician, he does not plead deliberate indifference. Plaintiff is not constitutionally entitled to see a doctor instead of a nurse because prisoners are not entitled to "the best [care] that money could buy . . . ." *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *Kimble v.*

*Correcthealth Jefferson, L.L.C.*, 2023 WL 3946437, at *2 (5th Cir. June 12, 2023) (finding no plausible claim where the plaintiff alleged that his facility's medical provider's reliance on nurses and nursing assistants "delayed his ability to meet with more 'educated' and 'qualified' health care professionals."); *Wilson v. Baucom*, 2023 WL 4288350, at *5 (5th Cir. June 30, 2023) (finding "none of the criteria to establish a credible" claim where the plaintiff was treated by a qualified mental health professional "instead of a doctor or some other more qualified health professional.").

Finally, that Vaughn instructed Plaintiff to, "Complete sick call," in response to his request for a second mat—ostensibly to provide additional cushion—does not bespeak deliberate indifference. *Id.* at 4. Vaughn did not ignore Plaintiff or, for instance, refuse to respond to an emergency; rather, she simply instructed Plaintiff to request care through the (presumably) standard channel. *See, e.g.*, *Taylor v. Stevens*, 946 F.3d 211, 226 (5th Cir. 2019) (reasoning, where the plaintiff only asked for a physician but did not explain why, that a nurse was not deliberately indifferent in (1) instructing the prisoner-plaintiff to "write up a 'nurse sick-call'" and (2) foregoing an immediate assessment) (vacated on other grounds by *Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020)); *Alexander v. Texas Dep't of Criminal Justice*, 2017 WL 5749548, at *3 (S.D. Tex. Nov. 28, 2017) ("Alexander's allegation that a nurse practitioner told him to submit a sick call request to see a physician about his need for pain medication does not establish that he was denied care with the requisite deliberate indifference . . . ."); *Mora v. Chapa*, 2013 WL 4590458, at *11 (S.D. Tex. Aug. 27, 2013).

Plaintiff does allege that he later requested care via a 'sick call,' and he claims that "no action was taken[,]" but he does not identify a responsible defendant, specify the medical need for which he requested care (his hemorrhoids or his mental health), provide the approximate date

10

he sought care, or allege that any individual knew of yet disregarded a substantial risk of serious harm. [doc. # 1, p. 3]. In this respect, Plaintiff's claim is vague and conclusory. In addition, he does not allege that the delay, from when Nurse Vaughn told him to "complete sick call" to when he did request care via a 'sick call,' caused him any substantial harm.

 iii. <u>Warden Deer and Warden Wade</u>

Plaintiff claims that Warden Deer and Warden Wade were negligent in failing to transport him to a physician to treat his periodically bleeding and swelling hemorrhoids.

As above, however, acts of negligence do not constitute deliberate indifference. In addition, that Plaintiff received medical treatment from a nurse rather than from a physician does not establish deliberate indifference.[8]

Deliberate indifference is an extremely high standard to meet. Ultimately, Plaintiff quarrels with the speed and quality of the care he received, at best pleading potential negligence or medical malpractice.[9] The Court should dismiss these claims.

**B. Mental Health**

Plaintiff could not sleep because "they took [him] off" his Serquels medication "for no reason." He suggests that he was diagnosed with depression, schizophrenia, and severe personality disorder. Because he lacks his medication, he hears voices and experiences paranoia, restlessness, hyper-activity, paranoid delusions, and nightmares.

---

[8] The undersigned addresses Plaintiff's state law malfeasance claim, which involves similar allegations, below.

[9] Again, if Plaintiff wishes to pursue negligence or malpractice claims, he should do so in state court.

Plaintiff claims that "they" lied when they told him that "they didn't give out" his

medication. [doc. # 9, p. 1]. Plaintiff, however, does not identify who "they" are or otherwise

identify a responsible defendant.[10] Moreover, Plaintiff does not sufficiently identify "any

particular defendant's personal involvement in conduct that caused constitutional deprivation."

*See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017) (dismissing a

claim that supervisory officials failed to correctly house the plaintiff because despite the

magistrate judge's instruction to "state what each defendant did[,]" the plaintiff did not identify a

responsible defendant). The Court disregards bare assertions of collective responsibility

unsupported by concrete factual allegations. *See Martinez v. City of N. Richland Hills*, 846 F.

App'x 238, 243 (5th Cir. 2021); *Jones v. Hosemann*, 812 F. App'x 235, 238-39 (5th Cir. 2020)

("It is not enough for a plaintiff to simply allege that something unconstitutional happened to

him. The plaintiff must plead that each defendant individually engaged in actions that caused the

unconstitutional harm.").

Next, Plaintiff attaches an "Offender Request Form," dated August 31, 2021, directed to

Warden Wade, in which he stated in part that he had a mental illness, that he needed to be at a

medical facility to receive medication, and that he was "taken [] off his prescribed medication[.]"

[doc. # 1-3, p. 2]. He requested a transfer to another facility for treatment. *Id.* He received a

response, ostensibly from Warden Wade, stating: "I can put you on [a] transfer list, but no

shipping is taking place right now. Mr. O should be back in a couple week[s] from his medical

leave." *Id.*

---

[10] The undersigned instructed Plaintiff to provide a separate description of what, exactly, each
defendant did to violate his rights and, with respect to his claims of lack of medical care,
"identify a responsible defendant(s)." [doc. # 8, pp. 2-3].

Plaintiff does not plausibly allege that Warden Wade knew of a substantial risk of serious harm. Even assuming Wade received and read Plaintiff's form, Plaintiff only informed Wade that he had an unidentified mental illness and that he lacked unspecified medication for an unspecified length of time.[11] Plaintiff did not recite his symptoms, explain why he required the medication, or otherwise describe a *substantial* risk of *serious* harm.[12] Rather, Plaintiff simply implied some indeterminate risk of harm.[13]

Next, on approximately September 2, 2021, Plaintiff filed a "Request for Administrative Remedy Procedure," stating in part that he was "taken off his prescribed medication" after he arrived at RPDC, that he was experiencing symptoms from a mental disorder, and that he had been taking his medication for two years. [doc. # 1-3, p. 1]. He requested $20,000.00 for his pain and suffering. *Id.* "[N]o action was taken within the time limits." [doc. # 1, p. 3]. Plaintiff, however, does not state to whom he directed his request, name a defendant who received and read the request, or otherwise identify a responsible defendant.

---

[11] Plaintiff suggests he arrived at RPDC in June 2021. [doc. # 1-3, p. 1].

[12] Of import, Plaintiff lumped his request for mental health medication in with other information: in the same form, he wrote that he was "trying to receive help with rehabilitation" to obtain parole, that he needed medical care for his hemorrhoids, that he had been "asking for help with classes" he needed to obtain parole, that he was doing everything to be a better father and person, that the detention center was holding him back, and that he had an "ARP in motion, along with a lawyer looking into a lawsuit against the parish jail." [doc. # 1-3, p. 2].

[13] *See Rombach v. Culpepper*, 2021 WL 2944809, at *5 (5th Cir. July 13, 2021) (finding that no defendant knew the plaintiff was exposed to a substantial risk of serious harm where the plaintiff only told them that he "did not feel well and [that] he wanted to go to the hospital."); *Roberts v. Lessard*, 841 F. App'x 691 (5th Cir. 2021) (Correctional center guards were not subjectively aware that inmate faced substantial risk of harm even though guards were aware that inmate was displaying stroke symptoms; inmate's symptoms, which included sweating, slurring speech, and trouble controlling movements, could also have suggested that he was intoxicated, and it was uncontested that guards believed the inmate was intoxicated).

To the extent Plaintiff claims that a defendant failed to respond to his grievance, he does not state a plausible claim. A prisoner does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); *see Alexander v. Texas Dep't of Criminal Justice*, 2020 WL 826452, at *2 (5th Cir. Feb. 20, 2020) (affirming dismissal of a claim that grievances were mishandled or improperly denied because "prisoners have no due process rights in the inmate grievance process.").

Finally, on an unknown date, Plaintiff filed an "Offender Request," in which he stated that he "can't sleep because someone took [him] off" his medication when he arrived at RPDC, that the medication helped him sleep, that his condition had worsened, and that he wanted his medication "back on pill call." [doc. # 1-3, p. 3]. On November 15, 2021, Nurse Kendra Vaughn responded, "Complete sick call." *Id.*

For the same reasons explained above, however, Vaughn's instruction to, "Complete sick call," does not bespeak deliberate indifference. *Id.* at 4. In addition, Plaintiff does not allege that the delay, from when Nurse Vaughn told him to "complete sick call" to when he did request care via a 'sick call,' caused him substantial harm.

Further, Plaintiff does not plausibly allege that Vaughn knew of a substantial risk of serious harm. He only asked Vaughn to provide unidentified medication which helped him sleep. While Vaughn may have gleaned that Plaintiff was exposed to some harm, Plaintiff does not plausibly allege that, from his abbreviated description of his medical needs and symptoms,[14] Vaughn knew he was exposed to a substantial risk of serious harm.

---

[14] In his Offender Request, Plaintiff did not mention his depression, schizophrenia, or severe personality disorder diagnoses. Nor did he mention hearing voices or experiencing paranoia, restlessness, hyper-activity, paranoid delusions, or nightmares.

14

Plaintiff, at bottom, does not describe wanton disregard or a "cold hearted, casual unwillingness to investigate what can be done for a man who is obviously in desperate need of help[.]"  *Davis v. Lithicum*, 574 F. App'x 379, 380 (5th Cir. 2014); *see Zaunbrecher v. Gaudin*, 641 F. App'x 340, 346 (5th Cir. 2016) (defining deliberate indifference as "egregious intentional conduct"); *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) ("Deliberate indifference is an extremely high standard to meet.").

The Court should dismiss these claims.

**3. RPDC**

Plaintiff names RPDC as a defendant.  Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ."  Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership."  LA. CIV. CODE art. 24.

RPDC does not qualify as a juridical person; accordingly, the Court should dismiss Plaintiff's claims against RPDC.

**4. State Law Claims**

Plaintiff claims that Warden Deer and Warden Wade "are in violation [of] R.S. 14:134.1, (1), (2), (3) malfeasance, by not tending to this matter."[15]  [doc. # 9, p. 1].

Plaintiff's claims are not cognizable under Section 1983.  For instance, in *Mathews v. Bowie Cty., Tex.*, 600 F. App'x 933, 934 (5th Cir. 2015) (internal citations removed), where the plaintiff alleged that correctional officers violated a state statute, the court opined: "his

---

[15] *See* LA. REV. STAT. § 14:134.

15

conclusory allegations that his treatment violated the Texas Administrative Code are insufficient to establish § 1983 liability.  Such action may constitute a breach of contract or violation of state law, but unless the conduct trespasses on federal constitutional safeguards, there is no constitutional deprivation."  "[A] violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights." *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005).

Further, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  When, as recommended here, all claims which conferred federal subject matter jurisdiction are dismissed, the Court may decline to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(c)(3).  In fact, this is the general practice.  *See Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) ("The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial.").  District courts have "wide discretion to dismiss state law claims" under Section 1367.  *Adams v. Fuller*, 2022 WL 17250191, at *1 (5th Cir. Nov. 28, 2022).

Under the interests of economy, convenience, fairness, and comity, the Court should dismiss any remaining state law claims without prejudice.[16, 17]

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Ryan A. Jefferson's claims arising under the laws and Constitution of the United States be **DISMISSED WITH**

---

[16] *See Spell v. Edwards*, 2023 WL 2110889, at *1 (5th Cir. Feb. 17, 2023); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

[17] The limitations period is tolled for a minimum of 30 days after dismissal.  28 U.S.C. § 1367(d).

**PREJUDICE** as frivolous and for failing to state claims on which relief may be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims arising under state law be **DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 24th day of August, 2023.

_____
Kayla Dye McClusky
United States Magistrate Judge